APPEAL OF THE McLAIN, HADDEN, SIMPERS CO.

Docket No. 1486.  Submitted May 5, 1925.  Decided September 8, 1925.

Personal service classification denied.

*A. C. Humphreys, Esq.*, for the taxpayer.
*J. A. Adams, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and GREEN.

This appeal is from the determination of a deficiency in income and profits taxes in the sum of $1,341.57 for the year 1918, based on the Commissioner's ruling that the taxpayer was not a personal service corporation within the meaning of section 200 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The taxpayer was organized in 1915 under the laws of Pennsylvania with an authorized and issued capital stock of $15,000, all of which was fully paid for.  The stock was held during 1918 as follows:

|  | Shares |
|---|---|
| W. R. McLain, president, | 56 |
| H. S. Hadden, vice president, | 49 |
| Robert S. Simpers, treasurer, | 39 |
| A. H. Bartsch, assistant treasurer, | 5 |
| W. H. Hicks, secretary, | 1 |
| Total | 150 |

The income and deductions for the year 1918 were as follows:

#### INCOME.

| | | |
|---|---|---|
| Profit or commission on advertising space | $59,339.47 | |
| Special work | 10,535.60 | |
| Commissions | 1,813.19 | |
| Drawing and photo sales | 14,605.72 | |
| Printing | 2,154.55 | |
| Discount on purchases | 1,037.21 | |
| Gross income | | $89,485.74 |

#### DEDUCTIONS.

| | | |
|---|---|---|
| Employees' salaries | $46,549.33 | |
| Other expenses | 15,986.82 | |
| Officers' salaries | 18,207.00 | |
| Interest and discount | 136.84 | |
| Taxes | 75.00 | |
| Bad debts | 1,238.07 | |
| Depreciation | 480.68 | |
| | | 82,673.74 |
| Net income | | 6,812.00 |

The balance sheets as at the beginning and end of the year 1918 are as follows:

|  | Jan. 1, 1918 | Dec. 31, 1918 |
|---|---|---|
| **ASSETS** | | |
| Cash | $3,722.85 | $9,572.55 |
| Accounts receivable | 17,223.35 | 39,685.76 |
| Supplies | 445.19 | 220.00 |
| Work in progress | | 185.00 |
| Furniture and fixtures | 3,963.63 | 3,985.34 |
| | 25,365.02 | 53,648.65 |
| **LIABILITIES** | | |
| Accounts and notes payable | 8,923.64 | 27,845.22 |
| Salary accrued | | 2,659.51 |
| R. S. Simpers, personal account | | 442.49 |
| Reserve for losses on accounts receivable | 298.54 | 1,457.88 |
| Reserve for depreciation | 340.86 | |
| Capital stock | 15,000.00 | 15,000.00 |
| Surplus | 802.98 | 6,243.55 |
| | 25,365.02 | 53,648.65 |

The taxpayer was in the year 1918 and is now engaged in the advertising business. In such business it acts as agent in placing contracts for advertising space, prepares advertising booklets and circulars, counsels and advises with its clients as to advertising policies and campaigns, and prepares and supervises advertising copy for periodicals. Its income for the year 1918 was derived from six sources: (1) Commissions and fees for advertising space, $59,339.47; (2) special work in preparation of catalogues, booklets, etc., $10,535.60; (3) commissions from engraving companies, $1,813.19; (4) drawings and photo sales advertising campaigns, $14,605.72; (5) printing, $2,154.55; (6) cash discount on purchase, $1,037.21.

The principal income was from commissions and fees for advertising space. During the year 1918 the taxpayer had 32 clients, of whom 22 clients paid the publishers direct and 10 clients paid their accounts through the taxpayer. The gross business of these contracts was $288,554.52, of which $151,368.59 was paid direct to the publisher by the advertiser, and $127,175.93 was billed through the taxpayer. The form of contract in which the advertiser paid direct to the publisher was as follows:

ADVERTISING ORDER

Order No_____. From Cortright Metal Roofing Co.

Date_____, 19___.

You are hereby authorized to insert our advertisement to occupy _____ in _____ during the term of _____ months for which we agree to pay _____ dollars, $_____ payable _____. One copy of each issue to be mailed to us at 50 N. 23d Street, Phila., and one to our Western office, 538 So. Clark Street, Chicago, Ill. We reserve the right to cancel after three months at yearly rates.

This advertisement to be placed _____.

We reserve the right to change our matter when we wish it_____.

This contract is limited to the time above stated.

This contract is subject to __% commission to the McLain-Hadden-Simpers Co., which you authorize us to pay them in view of our remitting direct.

                              Signed_____,

                                   _____.

ACCEPTANCE OF ADVERTISING ORDER FROM CORTWIGHT METAL ROOFING CO.

Order No_____.

                                   Date_____, 19__.

We accept your order dated _____ to insert your advertisement in _____ to occupy _____ to be used _____ during the term of _____ months, for which you agree to pay _____ dollars, $_____ payable _____.

We agree to send one copy of the paper containing advertisement to your main office, 50 N. 23d Street, Philadelphia, Pa., also one copy to your Western office, 538 So. Clark Street, Chicago, Ill., during the life of the contract. We grant you the privilege of cancelling after three months at yearly rates. You may change your matter when you desire.

We note the contract is limited to time stated.

We agree to allow the McLain-Hadden-Simpers Co. __% commission, which you are authorized to pay them, sending us the net amount of the bill direct.

                              Accepted_____,

                                   _____.

In this class of contracts the taxpayer was paid a commission of 10 to 15 per cent. This was paid by the publisher to the taxpayer and credited by the taxpayer to the advertiser's account. The advertiser contracted to pay the taxpayer a guaranteed minimum annual fee, which was payable whether the commissions received from the publishers equaled that amount or not. The accounts were billed by the publisher direct to the advertiser, but duplicate bills sent to the taxpayer for checking purposes. The advertiser, however, sent its proof and advertising material through the taxpayer, who supervised its preparation and forwarded the copy and goods to the publisher at proper times.

The form of the second class of contracts was as follows:

ACCEPTANCE OF ADVERTISING CONTRACT

This contract is dated _____

It begins _____

We accept your contract to insert your advertisement in _____ to occupy _____ to be used _____ during the term of _____, for which you agree to pay _____, payable in monthly installments after publication is ordered.

You are to receive a copy of the paper containing the advertisement during the life of this contract. We grant you the privilege of cancelling any time by paying card rates for space used according to present printed schedule; you may change your matter when you desire. This advertisement is to be placed _____.

We note this contract is limited to _____

                    Publisher's signature_____

                                   _____

During the life of this contract all proofs to be forwarded to McLain-Hadden-Simpers Co., 210 W. Washington Square, Philadelphia, for O. K., as well as one copy of each paper containing your ads.

All bills will be made out direct to you, but first sent to McLean-Hadden-Simpers Co. for O. K.

The client operating under this class of contract paid the taxpayer the advertising account plus their fees charged. The taxpayer billed the accounts each month in sufficient time to obtain the 2 per cent cash discounts. In each instance (except one) the money was received from the advertiser in sufficient time to forward it to the publisher and receive the cash discount. The cash discount was supposed to have been credited to the advertiser. The amount of $1,037.21 is claimed by the Commissioner to be an amount not passed on to the advertiser and income to the taxpayer.

The taxpayer's method of doing business was substantially as follows: When the taxpayer was employed by a client who desired to extend its business by advertising, it would first make a survey of the business, its product, and its markets. Then it would develop some suitable slogan or trade-mark about which to base a publicity campaign. This would be followed by the preparation of a publicity campaign with suitable pamphlets, sales letters and advertising for periodicals. Upon the plan being adopted it would supervise the publication of the catalogue, pamphlets, et cetera, and the purchase of space in periodicals. Contracts for the space in periodicals were executed between the publisher and the client. No space in periodicals was purchased or contracted for in advance by the taxpayer. After the execution of these contracts the taxpayer supervised the details of carrying the contracts into effect, such as the preparation and forwarding of copy and cuts and the checking up of accounts. The taxpayer had no printing or engraving plant of its own. It merely supervised and devised the work. Its equipment consisted of furniture and fixtures necessary to carry on its work, valued at $3,985.34.

The taxpayer did not employ solicitors to obtain business. Three of the stockholders devoted all their time exclusively to the business during the year 1918. The other two stockholders devoted part time, as hereinafter set forth. W. R. McLain, president, owning 59 shares, had general supervision of the business. He also personally advised and had contact with a certain group of the clients. H. S. Hadden, vice president, owning 49 shares, had charge of the New York office, and personal contact with the clients there. Robert S. Simpers, treasurer, owning 30 shares, during the year 1918 was in the military service, but before and after that year he had personal contact with certain specified clients. During part of the year 1918 he kept in touch with the office to some extent. A. H. Bartsch, assistant treasurer, and owning five shares, devoted most of his time

to one client, the Bosch Magneto. W. H. Hicks, secretary, owning one share, only devoted a few days a month to the business in auditing the books, for which he received a nominal salary. The office personnel had nothing to do with the planning of campaigns, original ideas, or consultation with clients. Their duties were confined to the actual work in making drawings, designs, et cetera, together with the necessary bookkeeping and accounting.

The taxpayer during the year 1918 regularly employed 28 employees other than the stockholders, as follows:

|                                            | Employees |
|--------------------------------------------|-----------|
| Copy department                            | 10        |
| Art department                             | 2         |
| Accounting and records                     | 4         |
| Production and checking department         | 5         |
| Stenographic and filing department         | 7         |
| Total                                      | 28        |

The total compensation paid the employees for said year was $46,549.33. The salaries of the officers and stockholders amounted to $18,207.

The taxpayer is recognized by the publishers as a card-rate advertising agent. This recognition was granted after investigation of its financial responsibility. The taxpayer also investigated the financial responsibility of its clients and during the year in question had no losses or bad debts except the sum of $1,238.07. This so-called bad debt was in reality expenses incurred in developing an advertising campaign for a prospective client that did not materialize.

DECISION.

The determination of the Commissioner is approved.

STERNHAGEN and ARUNDELL not participating.